UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


CHARLES DANIEL REED,

    Plaintiff

v.                                    CIVIL ACTION NO. 2:04-0214

ANNETT HOLDINGS, INC. and
ANNETT HOLDINGS, INC.,
d/b/a TMC TRANSPORTATION, INC. and
FORTUNE EXPRESS, INC., and
FORTUNE EXPRESS, INC.
d/b/a FORTUNE XPRESS, INC.,
and K.T.L., L.C., and
PRINCIPAL LIFE INSURANCE COMPANY,

    Defendants


<u>MEMORANDUM OPINION AND ORDER</u>


      Pending are (1) plaintiff's motions (a) to extend time to complete discovery, filed September 15, 2005, (b) for leave to file a supporting memorandum in excess of the page limitation contained in the Local Rules, filed October 14, 2005, (c) for leave to file a second amended complaint, filed the same day, (2) James D. Stidfole's motion to intervene as a plaintiff, filed October 31, 2005, and (3) motions filed by the "trucking company defendants," being all defendants other than Principal Life Insurance Company ("Principal") (a) to exceed the page limitation contained in the Local Rules, filed October 31, 2005, (b) for leave to submit a sur-reply filed November 16, 2005, and (4)

Principal's motion for leave to submit a sur-reply in opposition to plaintiff's motion to file a second amended complaint, filed November 18, 2005.

In the interests of not further prolonging this matter, the court ORDERS that the motions to exceed the page limitation be, and they hereby are, granted.[1]  For the same reasons, the court further ORDERS that the motions seeking leave to file sur-replies be, and they hereby are, granted.

I.

Plaintiff Charles Daniel Reed ("Reed") instituted this action in the Circuit Court of Kanawha County on February 19, 2004.  (Compl. at 1).  The complaint named only the trucking company defendants.  (Id.)  Reed alleged he entered into an owner-operator arrangement with the trucking company defendants.  (Compl. ¶¶ 9-10).  Under that arrangement, Reed entered into a

---

[1]Plaintiff's memorandum in support of his motion to amend spanned 38 pages.  The trucking company defendants' response memorandum was 33 pages.  Over 30 exhibits were submitted in support of the parties' differing positions.  In view of the non-dispositive nature of the motion, and those issues properly presented for review, the matter was quite susceptible to briefing within the page limitations contained in the Local Rules.  Nevertheless, the court is not inclined to strike the proposed filings and await further, compliant briefing.

2

lease-purchase agreement with the trucking company defendants. (<u>Id.</u>)

In sum, Reed, as a putative independent contractor, leased a tractor-trailer from the trucking company defendants.  (<u>Id.</u>)  He then apparently became an exclusive, independent contractor for the trucking company defendants, with the hope of one day purchasing the tractor-trailer.  (<u>Id.</u> ¶¶ 9-12).

According to Reed, he was in actuality an employee of the trucking company defendants, given that they, <u>inter alia</u>, controlled the details of his work.  (<u>Id.</u> ¶¶ 14).  Reed also alleged that load assignments were made to him in a manner that maximized the trucking company defendants' revenue while minimizing his chances of participating in a commercially successful venture.  (<u>Id.</u> ¶ 23).

On February 20, 2003, Reed completed a load assignment and was told by the trucking company defendants to bring his rig into a company garage in Indianapolis.  (<u>Id.</u> ¶ 15).  Upon doing so, and in disregard of an arbitration clause in the agreements entered into by the parties, Reed was terminated and forced to find alternate transportation home to West Virginia.  (<u>Id.</u>).

3

Reed also alleged the trucking company defendants wrongfully retained certain escrow monies he earned.  Based upon the foregoing allegations and others, Reed's rather simple complaint alleged claims for (1) breach of contract, and (2) common-law fraud.

On March 8, 2004, the trucking company defendants removed.  (Not. of Remov. at 1).  On March 24, 2004, the court entered an order and notice setting April 13, 2004, as the date for "any amendment by any party of any pleading."  (Ord. and Not. at 1).  On April 13, 2004, Reed moved for an enlargement of time to May 13, 2004, in which to file an amended complaint adding certain federal claims.  (Pl.'s First Mot. for Enlarg. at 2).  On May 11, 2004, the parties filed their Rule 26(f) report, proposing May 21 and June 1, 2004, as the respective, proposed dates for Reed and the trucking company defendants to amend their pleadings.  (Rule 26(f) Rep. ¶ 4(c) and (d)).

On May 12, 2004, the court entered a scheduling order setting a February 28, 2005, trial date.  (First Sched. Ord. at 1).  Inasmuch as the scheduling order did not contain a deadline for the filing of amended pleadings, the deadline contained in the order and notice was implicitly incorporated therein and became the Federal Rule of Civil Procedure 16(b)(1) de facto time

**4**

limit for amended pleadings.  Fed. R. Civ. P. 16(b)(1) (noting
the requirement of an order  that "limits the time . . . to join
other parties and to amend the pleadings . . . .").

On May 28, 2004, Reed supplemented his April 13, 2004,
motion to enlarge the time to amend the complaint.  (Pl.'s Supp.
at 1).  He recognized "The Order and Notice . . . set a date for
filing of any amendment by any party of any pleading of April 13,
2004."  (Id. ¶ 4).  On June 7, 2004, the court granted
plaintiff's April 13, 2004, motion to enlarge and deemed the
proposed amended complaint filed June 7, 2004.

The amended complaint added Principal Life Insurance
Company ("Principal") as a defendant.  (Am. compl. ¶ 6).  The
amended pleading added allegations that Principal and the
trucking company defendants refused to pay medical bills Reed
incurred in accordance with the trucking company defendants' self
funded group health insurance benefit plan ("plan").  (Id. ¶¶ 28-
30).  The four-count complaint retained Reed's claims for breach
of contract and common-law fraud and added additional claims for
(1) violation of the Fair Labor Standards Act of 1938 ("FLSA"),
29 U.S.C. § 201 et seq., and (2) breach of fiduciary duty and
wrongful denial of benefits under the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

On July 15, 2004, Reed filed notice of his first discovery request.  Following that date, the parties appear to have engaged in substantial discovery.  On October 13, 2004, the parties purported to extend the discovery deadline from the scheduling order date of October 15, 2004, to a new agreed date of November 3, 2004.  (Stip. for Ext. at 1).  On October 29, 2004, the parties moved for modification of the scheduling order.  (Jt. Mot. for Modif. at 1).  Reed contended the amendments to the complaint achieved on June 7, 2004, "served to substantially increase the number of issues and to substantially increase the complexity of" the case.  (Id. ¶ 4).  He also contended that "all of the Defendants have been cooperative and diligent in requesting discovery and in responding to discovery requests . . . ."  (Id. ¶ 6).  Reed agreed the case "should be ready for trial by August, 2005 . . . ."  (Id. ¶ 10).

On November 2, 2004, the court granted the joint motion for modification of the scheduling order.  (Rev'd Sched. Ord. at 1).  Discovery was extended to April 1, 2005, with trial to be held August 15, 2005.  (Id. ¶¶ 1, 7).  The parties then appear to have engaged in additional, substantial discovery through March 30, 2005.

On March 31, 2005, Reed moved anew to modify the scheduling order.  (Pl.'s Mot. for Modif. ¶ 3).  Reed again represented that the June 7, 2004, amended complaint "served to substantially increase the number of issues and . . . complexity" of the action.  (Id. ¶ 3).  He also averred anew that "Defendants have been cooperative and diligent" throughout the discovery process.  (Id. ¶ 6).  The motion represented that an extension of the scheduling order was warranted in view of, inter alia, the volume of discovery produced and the parties' ongoing settlement negotiations.  (Id. ¶¶ 6-10).  On April 1, 2005, the court granted the motion, extending the discovery deadline to September 15, 2005, and rescheduling trial for January 2, 2006.  (Ord. at ¶¶ 1, 7).  Thereafter, a number of discovery requests were exchanged and depositions taken.  Reed also moved to compel as to different requests served on both Principal and the trucking company defendants.

On September 15, 2005, Reed filed the instant motion to extend time to complete discovery.  (Pl.'s Mot. to Ext. at 1). As grounds for the requested extension, Reed contends (1) depositions were rescheduled for two months to accommodate a discontinuity of counsel for Principal, (2) a delay resulted from the unavailability of certain trucking company and Principal

deponents, (3) new evidence has surfaced from Gail Winkler, a telephone representative for Principal who claims her employer engaged in a systematic scheme to avoid consideration and payment of claims submitted by certain plan members,[2] and (4) the trucking company defendants provided late disclosures responsive to earlier discovery requests, perhaps necessitating new depositions.

The motion to extend seeks (1) a lifting of the discovery limitations set forth in the Federal Rules of Civil Procedure and the Local Rules, (2) consideration of then-promised motions (a) to add Stidfole as a party plaintiff, (b) for summary judgment as to Reed's status as an employee as opposed to an independent contractor and to declare the trucking company defendants violated ERISA by failing to have its plan file required financial statements, and (c) for leave to file a second amended complaint.  (Id. passim).  On September 22, 2005, the court observed the necessity of reviewing the as-yet un-submitted, proposed amended complaint prior to ruling on the motion to extend.  A briefing order was entered that same day.

---

[2]Principal contends in response that "Ms. Winkler has indicated, in writing, to counsel for Principal that her statements were incorrect and were nothing more than pure speculation."  (Def. Principal's Resp. to Mots. at 18 n. 11).

On October 18, 2005, Reed moved for leave to file a second amended complaint.  The same day, Stidfole moved to intervene.  The proposed second amended complaint is a stark departure from its predecessors.  A facile comparison between the number of paragraphs in the amended pleading, 52, and the proposed second amended pleading, 145, illustrates the point.  Further, from a more substantive standpoint, the second amended pleading would, inter alia, (1) add Stidfole as a party plaintiff, (2) plead a class action, (3) seek to represent a class of 135-500 class members as to the breach of contract and common-law fraud claims, and (4) alter the ERISA claims substantially, adding a fifth count and class claims that plead various violations of certain additional ERISA requirements for a class estimated, at one point, at 1500 members.

In determining the impact upon this action from a case management and scheduling perspective, one need look no further than Reed's own estimates of what these new allegations will require:

> Plaintiff's counsel acknowledges that the Motion for Leave to file a Second Amended Complaint presents numerous issues of law and fact, the sequence of determination of which could have bearing on case management and scheduling issues. . . . Plaintiff anticipates that substantial time for discovery and adjudication of dispositive motions and issue narrowing

motions will be needed.

. . . .

It is anticipated that granting of this Motion for
Leave to Amend will necessitate a new trial date and
scheduling order to manage what could be deemed a more
complex action . . . . Plaintiff anticipates another
twelve (12) months to eighteen (18) months for
discovery and other preliminary matters before the case
would be ripe for final pretrial matters.

(Pl.'s Mot. for Leave to Amnd. at 39).[3]

II.

A.   Motion For Leave to File a Second Amended Complaint

1. Governing Standard

Federal Rule of Civil Procedure 15(a) permits amendment

of a complaint after a responsive pleading has been filed "only

by leave of court or by written consent of the adverse party; and

---

[3]Reed's limited concession in the foregoing paragraph is a
bit inconsistent with the assessment made by him a year earlier.
He asserted in the October 29, 2004, joint motion to modify the
scheduling order that the comparatively minor amendments to the
complaint achieved on June 7, 2004, "served to substantially
increase the number of issues and to substantially increase the
complexity of" the case.  (Id. ¶ 4). (Jt. Mot. for Modif. at 1
(Oct. 29, 2004)).  He curiously contends in comparison, however,
that the instant, far more substantial proposed amendments,
"could" result in "a more complex action . . . ."

leave shall be freely given when justice so requires."  Fed. R.
Civ. P. 15(a).  In its most recent discussion of Rule 15(a), our
court of appeals observed as follows:

> Whether an amendment is prejudicial will often be
> determined by the nature of the amendment and its
> timing. A common example of a prejudicial amendment is
> one that "raises a new legal theory that would require
> the gathering and analysis of facts not already
> considered by the [defendant, and] is offered shortly
> before or during trial."  An amendment is not
> prejudicial, by contrast, if it merely adds an
> additional theory of recovery to the facts already pled
> and is offered before any discovery has occurred.

<u>Laber v. Harvey</u>, 438 F.3d 404, 427 (4th Cir. 2006) (citations
omitted).

    In addition to Rule 15(a), Rule 16(b) provides that "a
schedule shall not be modified except upon a showing of good
cause and by leave of the district judge or, when authorized by
local rule, by a magistrate judge." Fed. R. Civ. P. 16(b).  Rule
16(b) specifically contemplates the establishment of a deadline
for joining "other parties and . . . amend[ing] the pleadings."
Fed. R. Civ. P. 16(b).

    Seven courts of appeal have discussed the interplay
between Rules 15(a) and 16(b) when a pleading amendment has been
sought following expiration of the court-imposed deadline for
such modifications.  In each instance, the reviewing appellate

courts have accorded primacy to Rule 16(b).  See Leary v.
Daeschner, 349 F.3d 888, 908-09 (6th Cir. 2003); S & W
Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d
533, 536 (5th Cir. 2003); Parker v. Columbia Pictures Industries,
204 F.3d 326, 342 (2nd Cir. 2000); In re Milk Prods. Antitrust
Litig., 195 F.3d 430, 437 (8th Cir. 1999); Sosa v. Airprint Sys.,
Inc., 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam); Johnson
v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir.1992);
Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1154-55 (1st
Cir. 1992). 3 Daniel R. Coquillette, Moore's Federal Practice §
16.13 (3rd ed. 2005) (footnotes omitted) ("Once a district court
. . . establishes a time table for amending pleadings, Rule 16's
standards control. In such a setting, the need to support
effective case management trumps the general pleading rules.
Therefore, even if an amendment would be permitted under Rule 15
standards, a party may not add a claim or defense after a
deadline fixed in a scheduling order without first making a
showing of good cause.").[4]

---

[4]Our court of appeals has not squarely confronted in a
published opinion the interaction between the two rules.  In its
most recent mention of Rule 16(b) in this setting, however, it
appears to have at least implicitly noted the rule's potential
applicability in cases where the deadline for amended pleadings
has passed.  Laber, 438 F.3d at 427 n.23 ("The Army does not
argue that we should apply the 'good cause' legal standard in
(continued...)

In <u>Leary</u>, the most recent appellate decision to have confronted the issue, the United States Court of Appeals for the Sixth Circuit explained both the rationale for its holding and the proper application of Rule 16(b):

> More than twenty years after the Court's decision in Foman[<u>v. Davis</u>, 371 U.S. 178, 182 (1962)], the 1983 amendments to the Federal Rules of Civil Procedure altered Rule 16 to contain a provision restricting the timing of amendments. Rule 16 states, in relevant part: "the district judge . . . shall, after receiving the report from the parties under Rule 26(f) . . . enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings . . . ." The Rule is designed to ensure that "at some point both the parties and the pleadings will be fixed." Fed.R.Civ.P. 16, 1983 advisory committee's notes. The Rule permits modification to the scheduling order "upon a showing of good cause and by leave of the district judge." But a court choosing to modify the schedule upon a showing of good cause, may do so only "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16, 1983 advisory committee's notes. Another important consideration for a district court deciding whether Rule 16's "good cause" standard is met is whether the opposing party will suffer prejudice by virtue of the amendment.

<u>Leary</u>, 349 F.3d at 905 (some citations omitted). Diligence of the moving party, and prejudice, are thus paramount considerations under Rule 16(b).

---

[4](...continued)
Fed.R.Civ.P. 16(b) because Laber's motion to amend came after the deadline set in the scheduling order issued in this case. We therefore do not consider the issue.").

## 2.   Analysis

Although it appears Reed undertook substantial
discovery, there are several indications that diligence has been
lacking in some respects.  First, Reed contends in his motion for
enlargement that he was unable to depose Jennifer Meinders-
Thorington at some point between September 7-9, 2005.  (Pl.'s
Mot. for Enlarg. ¶ 6).  It appears the deponent was, however,
disclosed by the trucking company defendants on July 21, 2004, as
an individual with discoverable information.  (Trucking Co.
Defs.' Rule 26(a)(1) Disclos. at 1).

Similarly, plaintiff complains that Sheri Post,
Principal's compliance evaluation analyst, was not made available
for her September 9, 2005, deposition due to a death in her
family.  (Pl.'s Mot. for Enlarg. ¶ 8).  According to opposing
counsel, however, Post was identified on August 20, 2004, in
response to Reed's first interrogatories.  (Trucking Co. Defs.'
Resp. to Mot. for Enlarg. at 3).  Indeed, the trucking company
defendants respond that "[d]espite having information identifying
Sheri Post as having knowledge of the claim and procedures, and
production of Reed's entire claims file in August [2004], counsel
did not request the opportunity to depose Ms. Post for more than
six months."  (Id. at 3).

Third, Reed should have known from the outset of this action that others similarly situated likely suffered harms similar to his.  For example, he asserts that (1) the actions in this case, "[(2)] the Fedex action[, discussed in his briefing] and [(3)] the actions filed by the Owner Operator Independent Drivers Association [OOIDA] mentioned . . . [in his briefing] are symptomatic of a pattern of overreaching and economic abuse by segments of the trucking industry directed towards those least able to protect their rights or defend themselves."  (Pl.'s Reply on Mot. to Amnd. at 9).  Some of the referenced OOIDA actions were filed as early as 2000.  If the abuses Reed complains of were as endemic as he suggests, the propriety of class claims ought to have occurred to him at the outset of this action.

Finally, apart from considerations of diligence, Reed essentially proposes to insert a new, complex, and substantially more involved piece of class litigation into what was initially a simple individual claim.  The court is cognizant of the fact that discovery often spawns pleading amendments.  The scale of the proposed amendment here, along with the additional discovery and proceedings to develop it, would result in this action pending for perhaps several more years.  This would be anticipated in view of, <u>inter alia</u>, 12 to 18 months of additional discovery,

class certification briefing and resolution, potential appeals resulting therefrom, pretrial proceedings, a jury trial on some issues, a bench trial on other issues, and claims disposition as to affected class members.  Rule 16(b) would be rendered meaningless if such late-rising, substantial alterations of the case were permitted.

Based upon the foregoing, the court finds Reed has not demonstrated good cause to alter the pleading-amendment deadline. In view of this finding, the court need not reach defendants' substantial arguments under Rule 15(a) concerning the prejudice they would confront if forced to defend against the second amended complaint.  The court, accordingly, ORDERS that Reed's motion for leave to file a second amended complaint be, and it hereby is, denied.

B.   Motion to Intervene

1.   Governing Standard

Federal Rule of Civil Procedure 24(b) provides pertinently as follows:

    (b) Permissive Intervention. <u>Upon timely application</u> anyone may be permitted to intervene in an action: (1)

16

> when a statute of the United States confers a
> conditional right to intervene; or (2) <u>when an
> applicant's claim or defense and the main action have a
> question of law or fact in common</u>. . . . In exercising
> its discretion the court shall consider whether the
> intervention <u>will unduly delay or prejudice the
> adjudication of the rights of the original parties</u>.

Fed. R. Civ. P. 24(b) (emphasis supplied).

Our court of appeals has recognized that, "in requiring intervenors to seek leave of court, . . . [R]ule [24(b)] recognizes the role of the district court as the primary manager of a civil action once instituted." <u>Bridges v. Department of Maryland State Police</u>, Nos. 05-1078, -1691, --- F.3d ---, --- (4th Cir. Mar. 20, 2006). One component of this managerial role is an inquiry into the timeliness of the application for intervention:

> Under either Rule 24(a) or 24(b), the application for
> intervention must be timely.  Although Rule 24
> "requires that the motion to intervene be 'timely,' . .
> . it does not attempt to define the term or specify
> rigid time limits."  "The purpose of the requirement is
> to prevent a tardy intervenor from derailing a lawsuit
> within sight of the terminal."  To determine whether an
> application for intervention is timely, we examine the
> following factors: how far the suit has progressed, the
> prejudice that delay might cause other parties, and the
> reason for the tardiness in moving to intervene.  Where
> intervention is of right, "the timeliness requirement
> of Rule 24 should not be as strictly enforced as in a
> case where intervention is only permissive."

<u>Scardelletti v. Debarr</u>, 265 F.3d 195, 202-03 (4th Cir. 2001), <u>reversed on other grounds sub nom.</u>, <u>Devlin v. Scardelletti</u>, 536 U.S. 1, 14 (2002) .

17

## 2.   Analysis

Stidfole moves for permissive intervention as a party plaintiff pursuant to Rule 24(b).  He contends there are numerous issues of fact and law in common between his claims and those asserted by Reed, including (1) whether he was an employee rather than an independent contractor, (2) whether the agreements he entered into constitute an employment agreement, (3) whether the agreements are a sham transaction, and (4) whether the trucking company defendants engaged in fraud.  (Memo. in Supp. of Mot. to Intervene at 2, 4).

A number of considerations counsel in favor of denying intervention.  First, the court has denied Reed's motion to amend the complaint.  The second amended pleading would have provided the basis for Stidfole's entry into this action.

Second, although there may be some common issues of fact and law, they are outweighed by expected factual and legal variances.  For example, Stidfole did not participate in the health plan forming the basis for Reed's benefits claim.  Indeed, Stidfole has no apparent claim against Principal at all. Further, Stidfole was himself responsible for terminating his

18

agreements with the trucking company defendants.  Reed's
agreements, however, were terminated by the trucking company
defendants alone.  Further, the two men also attended different
orientation sessions.  There may thus be important factual
differences relevant to the representations made to the two men
and their respective common-law fraud claims.  See Stokes v.
Westinghouse Savannah River Co., 206 F.3d 420, 431 (4th Cir.
2000) ("the differences in circumstances among the applicants'
employment and layoff justify the district court's denial of
permissive intervention under Rule 24(b).")

          Third, the court considers the issue of timeliness.
Regarding the first factor, the case has pended since March 8,
2004.  The initial scheduling order has been extended twice,
resulting on each occasion in a discovery extension of five and a
half months.  The instant motion seeking a third, substantially
longer extension came on the date that marked the end of
discovery.  The litigation had thus progressed substantially.
This is a case near the summary judgment motion stage where
intervention would "derail[] a lawsuit within sight of the
terminal." Scardelletti, 265 F.3d at 202.

          Regarding the second factor, and as aptly noted by the
trucking company defendants, "[t]his case is postured to move out

19

of the discovery phase . . . .  All defendants in this case would be prejudiced if Stidfole were permitted to intervene at this stage."  (Trucking Co. Defs.' Surreply at 3).  Prejudice is all the more apparent in relation to Principal, against whom Stidfole asserts no claims.  That entity, however, would be forced to stand by while Stidfole's claims against the trucking company defendants were developed through discovery.

Regarding the third factor, Stidfole offers little explanation for his failure to move earlier.  Although the court is mindful of its continuing obligation to resolve civil actions on their merits, it cannot simply disregard the timeliness requirement, especially when only permissive intervention is sought.  Scardelletti, 265 F.3d at 203.

The court, accordingly, concludes that permissive intervention is inappropriate.  The court thus ORDERS that Stidfole's motion to intervene be, and it hereby is, denied.

C.   Motion to Extend Time to Complete Discovery

In anticipation that his motion for leave to amend, and Stidfole's motion to intervene, would be granted, Reed has also moved to extend the discovery deadline by 12 to 18 months.  Based

upon the foregoing analysis, such a lengthy extension is unwarranted and unnecessary.  The court, accordingly, ORDERS that Reed's motion to extend time to complete discovery be, and it hereby is, denied without prejudice.

Nevertheless, it appears that some discovery remains. The court is prepared to grant a brief extension to allow completion of this remaining discovery upon proper motion. Further, the court will entertain a revised motion for leave to file a more narrow, second amended complaint which seeks to add only the newly discovered claims as to Reed alone, if any.  The revised motion and proposed second amended pleading must be filed no later than May 1, 2006.  If the revised motion is granted, the court will allot a final, 90 day period to conclude discovery on the existing and added claims.  If the revised motion is denied, the court will allot a final, 30 day period to conclude discovery.

The court observes that if Reed is dissatisfied with these proposed allotments, he may, of course, file the class action he and Stidfole propose to pursue and then seek voluntary dismissal of this action.

III.

Based upon the foregoing discussion, the court ORDERS as follows:

1.  That Reed's motion for leave to file a second amended complaint be, and it hereby is, denied;

2.  That Stidfole's motion to intervene be, and it hereby is, denied;

3.  That Reed's motion to extend time to complete discovery be, and it hereby is, denied without prejudice;

4.  That Reed be, and he hereby is, directed, no later than May 1, 2006, to (a) advise the court he is prepared to conclude discovery within 30 days, at which time the court will enter a final scheduling order, (b) file a revised motion and proposed second amended pleading in compliance with the foregoing discussion, or (3) advise the court of his intention to pursue a new, separate class action to redress his existing and proposed claims and those of others similarly situated; and

22

5.    That the present stay in this action is continued
pending Reed's decision and the subsequent entry of a
revised scheduling or voluntary dismissal order.

    The Clerk is directed to forward copies of this written
opinion and order to all counsel of record.

DATED: April 19, 2006

John T. Copenhaver, Jr.
United States District Judge

23